IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DASHA FINCHER,<br><br>*Plaintiff*,<br><br>v.<br><br>THE MONROE COUNTY BOARD OF COMMISSIONERS; CODY MAPLES; ALLEN HENDERSON; KEVIN WILLIAMS; SIRCHIE ACQUISITION COMPANY, LLC; and JOHN DOE,<br><br>*Defendants.* | CIVIL ACTION NO.<br>5:18-cv-00424-TES |

**ORDER GRANTING DEFENDANT SIRCHIE ACQUISITION COMPANY, LLC'S MOTION TO DISMISS**

Plaintiff Dasha Fincher spent 94 days in jail after being arrested for allegedly trafficking methamphetamines. However, the field drug test that the deputies used to test for the drugs (which later turned out to be nothing more than blue cotton candy) returned a false positive result. Understandably upset, she has sued the drug test manufacturer for products liability claims under Georgia law and the county officials involved in her arrest for several state-law causes of action as well as alleged violations of her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.

Defendant Sirchie Acquisition Company, LLC ("Sirchie") designed and manufactured the field drug test in question. Plaintiff claims that she is entitled to

damages against Sirchie for its allegedly negligent design, manufacture, and distribution of the NARK II Presumptive Drug Test Kit used and relied upon by the deputies who arrested her. [Doc. 4 at ¶ 116]. In response, Sirchie has filed a Motion to Dismiss [Doc. 7] Plaintiff's Amended Complaint [Doc. 4] against it. After review of the record and the parties' briefs, the Court **GRANTS** Defendant's motion for the following reasons.

## FACTUAL BACKGROUND

The Court takes the following facts from Plaintiff's Amended Complaint[1] and assumes them to be true for the purpose of ruling on Defendant's motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). On December 31, 2016, Defendants Cody Maples and Kevin Williams, two Monroe County Sheriff's Deputies, arrested Plaintiff after initiating a traffic stop of a vehicle driven by David Maynard Morris in which she was a passenger. [Doc. 4 at ¶¶ 9, 14]. According to Plaintiff, Defendants Maples and

---

[1] As a preliminary matter, the Court addresses the discrepancy between Plaintiff's Complaint [Doc. 1] and her Amended Complaint [Doc. 4], each of which contains notable differences in documents attached to the respective pleadings. *Compare* [Docs. 1-1, 1-2, 1-3] *with* [Docs. 4-1, 4-2, 4-3]. The attachments contained in her initial Complaint, [Docs. 1-1, 1-2, 1-3], are too pixilated and distorted to definitively make out the image. However, it appears that Plaintiff attempted to remedy her previously filed exhibits in her Amended Complaint by filing much clearer images of the traffic stop.

While inclusion of matters outside the pleadings typically converts a motion to dismiss into a motion for summary judgment, the Court need not make this conversion if the attachments are undisputedly authentic and central to the plaintiff's claim. *See* Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). Such is the case here.

Nonetheless, exhibits to a pleading constitute part of the pleading itself, and as a matter of law, an amended complaint supersedes former pleadings, which are "abandoned" and "become a legal nullity" unless the amendment specifically refers to or adopts the earlier pleading. Fed. R. Civ. P. 10(c); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982).

Williams contend that their basis for stopping Mr. Morris' vehicle was "because they believed the window tint on the car was too dark." [*Id.* at ¶ 15]. However, after stopping the car, Plaintiff avers that Defendants Maples and Williams stated that "the window tint was not in violation of the law." [*Id.* at ¶ 16].

During the traffic stop, the two deputies asked Mr. Morris if they could search his vehicle. [*Id.* at ¶ 19]. After what Plaintiff purports to be an "extensive[ ]" search, one of the deputies "produced a large, open clear plastic bag which contained a light blue substance, spherical in shape" on the floor of the vehicle—later determined to be nothing more than blue cotton candy. [*Id.* at ¶¶ 20–22]. After discovery of the cotton candy, both deputies "sniffed the contents" of the plastic bag and then one of the deputies placed the bag on the hood of their patrol car before continuing to search the vehicle. [*Id.* at ¶¶ 24–26].

At the conclusion of the search, either Defendant Maples or Williams tested the blue cotton candy using a Nark II roadside methamphetamine test kit manufactured by Sirchie, which, according to Plaintiff has "a history of producing false positive results." [*Id.* at ¶¶ 30–32]. The Nark II roadside test is utilized by combining initially clear testing liquids, in a specific order, with the substance suspected to contain illegal drugs, cotton candy in this case, to reveal a colored liquid—either purple to reveal the presence of methamphetamine (positive result) or red to show that no methamphetamine is present (negative result). [*Id.* at ¶ 33]. After conducting the test, either Defendant Maples or

3

Williams informed Plaintiff and Mr. Morris that the field test yielded a purple color indicating a positive methamphetamine result. Despite Plaintiff and Morris persistent pleas that the "meth" was nothing more than blue cotton candy, the deputies nonetheless placed them under arrest. [*Id.* at ¶ 22, 35–36].

Plaintiff waited 11 days before she appeared for her first bond hearing. [*Id.* at ¶ 43]. At the conclusion of the hearing, the presiding judge, based on an "arresting officer's testimony," ordered a cash bond in the amount of $1,000,000. [*Id.*]. Unable to pay the bond, Plaintiff stayed in jail. [*Id.*].

In the interim, Defendants Maples and Williams, along with another deputy, Defendant Allen Henderson, testified before a Monroe County grand jury, which in turn indicted her for trafficking methamphetamine[2] and possession of methamphetamine.[3] [*Id.* at ¶¶ 38–39]. The authorities sent the blue cotton candy to the Georgia Bureau of Investigation ("GBI") crime lab for testing. [*Id.* at ¶¶ 40–42]. The GBI crime lab received the cotton candy for testing on January 6, 2017. [*Id.* at ¶ 44; Doc. 4-6 at p. 1].

Plaintiff remained incarcerated pending the results of the tests that the GBI crime lab conducted to conclusively determine whether what we now know to be cotton candy actually contained a controlled substance. [*Id.*]. Seventy-five days[4] from the date the GBI

---

[2] Ga. Code Ann. § 16-13-30(e)

[3] Ga. Code Ann. § 16-13-30(b).

[4] The GBI crime lab issued its results and conclusions on March 22, 2017. [Doc. 4-6 at p. 1].

4

crime lab received the cotton candy for testing, it issued a report concluding that "[n]o controlled substances [were] confirmed in the sample tested . . . ." [*Id.* at ¶ 44; Doc. 4-6 at p. 1]. Thirteen days after receiving the GBI crime lab results confirming that Plaintiff and Morris were not trafficking methamphetamines, the Monroe County Sheriff's office released her on a recognizance bond. On April 18, 2017, she appeared for arraignment, at which point the superior court judge nol prossed the charges against her. [Doc. 4 at ¶¶ 62–63]. As a result of her arrest, Plaintiff spent 94 days in jail and missed the birth of her twin grandsons. [*Id.* at ¶¶ 9, 36, 50, 62].

On the belief that Sirchie "knew or should have known" that the Nark II Test Kit "could lead to an innocent person being arrested for a drug violation" she seeks to recover damages against Sirchie under negligence and the following theories of products liability: (1) design defect, (2) manufacturing defect,[5] and (3) inadequate warning. [*Id.* at ¶¶ 107–19].

---

[5] Aside from Plaintiff's use of the word "manufacturing," her Amended Complaint contains nothing consistent with a manufacturing defect claim. *See Brazil v. Janssen Research & Dev. LLC*, 196 F. Supp. 3d 1351, 1358 (N.D. Ga. 2016) (first citing *Fletcher v. Water Applications Distrib. Grp. Co.*, 773 S.E.2d 859, 863 (Ga. Ct. App. 2015); and then quoting *Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002) ("A manufacturing defect is one where there was flaw from the manufacturing process not in the design or specifications of the product. 'Generally, a manufacturing defect results from an error specifically in the fabrication process, as distinct from an error in the design process.' 'Thus, by definition, a manufacturing defect will always be identifiable as a deviation from some objective standard or a departure from the manufacturer's specifications established for the creation of the product.'").

Therefore, the Court addresses her overarching claim as design defect claim against Sirchie. *See* p. 9, *infra*. Moreover, the parties treat both torts as one in the same given the structure of Sirchie's argument in its brief in support and Plaintiff's Response. *See* [Docs. 7-1 at pp. 11–14, 9-1 at pp. 8–13].

**DISCUSSION**

A.   **Standard of Review**

Defendant Sirchie seeks to dismiss Plaintiff's action against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[6] When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled

---

[6] To any extent that Plaintiff attempted to assert a claim for fraud, as addressed in Sirchie's brief in support of its dismissal motion, an analysis regarding Federal Rule of Civil Procedure 9(b)'s heightened pleading standard is no longer required by the Court in light of Plaintiff's clarification that her "Amended Complaint never mentions fraud, much less attempts to assert a claim for such." [Docs. 7-1 at pp. 17–19 *in connection with* 9-1 at p. 16].

to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*

by *Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Amended Complaint as true, the Court rules on the Defendant Sirchie's dismissal motion.

### B. Defendant Sirchie's Motion to Dismiss [Doc. 7]

The claims against Sirchie revolve around the false positive results obtained from the Nark II Test Kit. [Doc. 7-1 at pp. 3–4]. While not alleged in this specific order in her Amended Complaint, Plaintiff first alleges that Sirchie negligently designed and manufactured its drug test kit because it "knew or should have known" that the Nark II Test Kit "could lead to an innocent person being arrested" on drug charges based on a false positive result. [Doc. 4 at ¶¶ 110, 116]. She also contends that Sirchie "failed to warn" or gave an "improper warning" to its consumers of the possibility for false positive results, and that it made a "false representation" as to the reliability of its drug test kit. [*Id.* at ¶¶ 114, 118]. The Court addresses each claim in turn.

1. <u>Design Defect</u>

As previously stated, Plaintiff asserts a design defect claim against Sirchie by alleging that Sirchie "negligently designed . . . the drug test used in [Plaintiff's] arrest." [*Id.* at ¶ 116]. Unlike a manufacturing defect case where it is assumed that the design of the product itself is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use, a design defect case, like this one, means that Plaintiff calls into question the entire Nark II Test Kit product line. *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673 (Ga. 1994). To recover on her defective design claim against Sirchie, Plaintiff must establish that (1) the Nark II Test Kit's design is defective and (2) that its defective design was the proximate cause of her injuries. *Brown v. Sirchie Acquisition Co., LLC*, No. 1:16-CV-175-SCJ, 2017 WL 4082690, at *3 (N.D. Ga. 2017) *aff'd*, 694 F. App'x 745 (11th Cir. 2017) (per curiam); *see also* Ga. Code Ann. § 51-1-11(b)(1). "The plain language of [Ga. Code Ann. § 51-1-11(b)(1)] extends manufacturer liability not only to those who may use the property, but also to those persons who may 'consume' the property or 'reasonably be affected' by it." *Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 103 (Ga. 2001).

Going further, Georgia's adoption of the risk-utility analysis[7] tells us that a product design is defective if "the risks inherent in a product design [outweigh] the utility or benefit derived from the product." *Dean v. Toyota Indus. Equip. Mfg., Inc.* 540 S.E.2d 233, 237 (Ga. Ct. App. 2000); *see also Banks* 450 S.E.2d at 674.

"Under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." *Woods v. A.R.E. Accessories, Inc.*, 815 S.E.2d 205, 209 (Ga. Ct. App. 2018) (quoting *Banks*, 450 S.E.2d at 675). Instead, the "reasonableness" test lying at the heart of risk-utility analysis imposes liability for a design defect only where the manufacturer has failed to adopt a reasonable alternative design that would have reduced foreseeable risks of harm posed by the product. *Id.* (quoting *Jones*, 550 S.E.2d at 103); *see also Banks*, 450 S.E.2d at 674 ("One factor consistently recognized as integral to the assessment of the utility of a design is the availability of

---

[7] While crucial to the risk-utility analysis, alternative-design availability is only one facet among many to consider when determining whether a product's design is defective. Other factors for consideration include:
> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

*Brown*, 2017 WL 4082690 at *4 (quoting *Banks*, 450 S.E.2d at 675 n.6).

The risk of a false positive must outweigh the benefits that field drug tests provide. *See id.* (citing *Banks*, 450 S.E.2d. at 674). Plaintiff provides no factual allegations that enable the Court to even begin undertaking such an analysis.

alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design.").

Consequently, the appropriate analysis is not dependent on the use of the product, but rather includes the consideration of whether Sirchie failed to adopt a reasonable alternative design that would have reduced the foreseeable risks of harm presented by the Nark II Test Kit. *Jones*, 550 S.E.2d at 103; *see also Woods*, 815 S.E.2d at 209 (Georgia's risk-utility analysis "includes the consideration of whether [Sirchie] failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the product."). Notwithstanding the foregoing, liability for a defective design claim "attaches *only* when the plaintiff proves that the seller failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." *Woods*, 815 S.E.2d at 209 (emphasis in original).

In its accompanying brief, Sirchie argues that "in order for a plaintiff to succeed on a design defect claim, the plaintiff must set forth evidence of a reasonable alternative design that the manufacture should have adopted instead of the defective design." [Doc. 7-1 at p. 12]. And, because Plaintiff's Amended Complaint "makes no allegation of a reasonable alternative design for the Nark II Test Kit," Sirchie contends that she failed to properly state a design defect claim. [*Id.* at p. 13]. For reasons akin to the holding in *Brown*, the Court agrees. 2017 WL 4082690.

Here, the essence of Plaintiff's Amended Complaint is that Sirchie "knew or should have known that their test could lead to an innocent person being arrested for a drug violation based on a false positive." [Doc. 4 at ¶ 110]. Nowhere in Plaintiff's Amended Complaint does she set forth any reasonable alternative design[8]—an allegation that the Georgia Supreme Court has undeniably determined to be the "heart" of a design defect claim. *Jones*, 550 S.E.2d at 103. Furthermore, if—as Georgia law clearly states—liability will only attach when Plaintiff can prove that Sirchie failed to adopt a reasonable alternative design to reduce the foreseeable risks of harm presented by the Nark II Test Kit, then logic dictates that in order to *prove* an essential element of a claim so as to survive a motion to dismiss, a plaintiff must first plead it. *Woods*, 815 S.E.2d at 209.

The "Products Liability" portion of her Amended Complaint simply asserts that Sirchie "negligently designed" the Nark II Test Kit and that its "defective product design" caused the Plaintiff's damages. [Doc. 4 at ¶¶ 116, 118]. Strikingly similar to the scenarios presented in *Brown*, "[t]he only allegation relevant to a design defect in the . . . Amended Complaint is that the drug test kits return false positives." 2017 WL 4082690 at *4; *see also* [Doc. 4 at ¶¶ 109–11, 114–15, 117]. As in *Brown*, Plaintiff simply assumes a design defect exists. While the Court is undoubtedly aware of its obligation to accept as true and

---

[8] In fact, Plaintiff's Amended Complaint fails to mention the notion of a reasonable alternative design at all. Rather, it simply makes the conclusory allegation that "Sirchie's defective product design [along with a host of other allegations] is the proximate cause of [her] injuries." [Doc. 4 at ¶ 118]. Such a bare-boned assertion fails to meet the pleading requirements required by *McCullough*.

construe all factual allegations in Plaintiff's favor at this stage of the proceedings, it cannot fill in the required factual gaps by assuming facts that are wholly excluded from the Amended Complaint on Georgia law's critical issue of "reasonable alternative design."

Considering the guidance provided by *McCullough*, which only allows Plaintiff to use legal conclusions to structure her Amended Complaint, the Court may not accept factually-unsupported legal conclusions such as—"Defendant Sirchie negligently designed" the Nark II Test Kit and "Defendant Sirchie's defective product design . . . is the proximate cause of [Plaintiff's] damages[]"—to stand in the place of required factual allegations. 907 F.3d at 1333; *see also Iqbal*, 556 U.S. at 678.

Consistent with the reasoning in *Brown*, Plaintiff's Amended Complaint contains nothing about reasonable alternative designs and therefore her design defect claim cannot withstand Sirchie's dismissal motion. While it is true that Plaintiff attached a Fox 5 news story as an exhibit, [Doc. 4-4], to her Amended Complaint, this attachment provides nothing by way of "reasonable alternative design" to nudge her claim into plausible territory. *See Twombly*, 550 U.S. at 570. The news story undoubtedly discussed how "$2 disposable tests" are "show[ing] positive results for items that clearly [have] nothing to do with illegal drugs," however, any comment regarding other companies' products or alternative designs to the Nark II Test Kit that Sirchie could have

implemented to reduce foreseeable risks of harm is nonetheless absent.[9] [Doc. 4-4 at p. 1].

In an effort to substantiate her position that she has, in fact, proven that a reasonable alternative is readily available, Plaintiff argues in her Response to Sirchie's dismissal motion, that "[a] competitor to Sirchie, MobileDetect, uses an app and picture taken of the results to provide confirmation of the test kit results." [Doc. 9-1 at p. 12]. Additionally, Plaintiff contends that "[a]nother Fox 5 news story in that same series," mentions an alternative test. [*Id.*]. Her Response goes on to say, "The 'Douglas County sheriff's office bought a $30,000 handheld mass spectrometer to test for suspicious drugs in the field, reducing their dependence on the NIK tests.'" [*Id.*]. Although Plaintiff filed both an original Complaint and an Amended Complaint, the first and only time she mentions the MobileDetect test and the mass spectrometer for the possibility that they be seen as reasonable alternative designs, is in her Response to this motion. While she is arguably correct that "[t]he reasonableness of these tests is not a question for this Motion to Dismiss," her presentment of these two purported alternatives (assuming that they are in fact reasonable alternatives) is simply too late to save her products liability claims. [*Id.* at p. 13].

---

[9] With respect to the favorable consideration owed to Plaintiff at this stage and to ensure the accuracy of its ruling, the Court viewed the video posted on Fox 5 Atlanta's website that is available on the same page as the story Plaintiff presented in her exhibit to her Amended Complaint. [Doc. 4-4 at p. 3, http://www.fox5atlanta.com/news/i-team/innocent-georgians-jailed-over-false-positives-from-drug-field-test-kits].

Because Plaintiff included these two "alternative designs"[10] in her Response, and not in her Amended Complaint, means that the Court cannot consider them when evaluating whether her Amended Complaint states a claim for relief. *See Huls v. Liabona*, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curiam) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint); *Jiles v. PNC Bank Nat'l Ass'n*, 5:10-CV-180 (CAR), 2012 WL 3241927, at *5 (M.D. Ga. Aug. 7, 2012) (court not required to consider new allegation raised for the first time in response to defendant's motion to dismiss and not raised in complaint or amended complaint).

Therefore, for the foregoing reasons, Plaintiff's Amended Complaint is fatally flawed and her design defect claim must be **DISMISSED**.

2.   Failure-to-warn/Inadequate Warning[11]

A reasonable and favorable reading of Plaintiff's Amended Complaint leads to the conclusion that she is alleging a failure-to-warn claim as well as an inadequate warning

---

[10] Again, the Court only assumes that they are reasonable alternative designs. The Court has serious doubts that a mass spectrometer is an alternative *design* to a field test kit. Rather, a reviewing court would more likely assume that it is a completely different piece of equipment as opposed to an alternative design (much like a MRI is a different piece of equipment as opposed to an alternative design to an X-ray).

[11] Given that Plaintiff is not asserting a fraud claim, the Court assumes that her claim alleging a false representation falls within the ambit of her failure-to-warn/inadequate warning claims. *See* n.6, *supra*. To the extent Plaintiff is making an independent false representations claim, this claim fails for the same reasons as the others. "False representation[ ]" is mentioned once in the Products Liability portion of her Amended Complaint and the claim itself is a bald legal conclusion and unsupported by any factual allegations whatsoever. *Brown*, 2017 WL 4082690 at *7; *see also* [Doc. 4 at ¶ 118].

15

claim against Sirchie regarding its Nark II Test Kits. In her Amended Complaint, Plaintiff states the following:

> 114. Defendant Sirchie failed to warn their consumers of the possibility for false positive results when testing a colored substance.
>
> [. . .]
>
> 117. Defendant Sirchie failed to notify Defendants Maples, Williams, and/or Monroe County of the potential for false positive drug test results that lead to [Plaintiff's] arrest.
>
> 118. Defendant Sirchie's . . . improper warning, improper training[12] and/or false representations as to the reliability of their drug test is the proximate cause of [Plaintiff's] damages.

[Doc. 4 at ¶¶ 114, 117–18]. If Plaintiff seeks to bring a failure-to-warn claim, her claim, as pled, must be dismissed.

---

[12] In paragraph 115, Plaintiff alleges that Sirchie "failed to provide training to law enforcement personnel on the proper use and potential for false positive test results." [Doc. 4 at ¶ 115]. To the extent Plaintiff attempts to assert a negligence claim against Sirchie for improper training, her claim is **DISMISSED**. To state a claim for negligence under Georgia law, it is well established that a plaintiff must establish a duty, a breach of that duty, causation, and damages. [Doc. 7-1 at p. 19 (citing *Johnson v. Am. Nat'l Red Cross*, 578 S.E.2d 106, 108 (Ga. 2003).

Here, it is clear that Plaintiff cannot satisfy the necessary elements to state a claim for negligence. Her bare-boned legal conclusions are devoid of any supporting factual allegations to show that her damages result from a breach of any duty owed to her by Sirchie. In fact, Plaintiff herself stated that "Defendant Monroe County failed to adequately train Defendants Maples, Williams, and Henderson on the proper use of the roadside drug test." [Doc. 4 at ¶ 80]. As the Northern District of Georgia held in *Brown*, Plaintiff's failure to properly allege a legally cognizable design defect, failure-to-warn, or inadequate warning claim means that she cannot state a viable claim for negligence. 2017 WL 4082690 at *7. Because the Court has no facts to consider the plausibility of a design defect, failure-to-warn, or inadequate warning claim it follows that the factual allegations needed for a negligence claim are absent as well.

Her Amended Complaint, as it relates to a failure-to-warn claim, perfectly illustrates a legal conclusion. Simply stating that Sirchie "failed to warn" without any factual support is the epitome of a conclusory allegation and, as such, it is not entitled to the assumption of truth. *McCullough*, 907 F.3d at 1333; *see also* [Doc. 4 at ¶ 114].

Next, Plaintiff's claim that Sirchie's product gave an inadequate warning fails for the same reason. [*Id.* at ¶ 118]. If, in fact, Plaintiff is attempting to plead an inadequate warning claim, she has not provided, via her Amended Complaint, what warning she alleges to be improper. The *only* mention of the warning allegedly provided by Sicrhie is contained within Plaintiff's Fox 5 news story that she attached as an exhibit to her Amended Complaint. [Doc. 4-4 at p. 3 ("'Our NARK presumptive drug tests are presumptive only. All samples should be sent to a crime lab for confirmation.' Each box carries the same warning.")].

To verify this statement, the Court examined the images provided by Sirchie in its brief in support. However, the quoted language in the Fox 5 news story clearly is not the same as the language presented by Sirchie on its purported packaging images.[13]

---

[13] After consideration of Plaintiff's argument, the Court agrees that Sirchie's purported exemplar can be reasonably questioned given that there is no mention of when the package was produced in relation to events surrounding this case. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (citing Fed. R. Evid. 201(b) ("A judicially-noticed fact must be one that is not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."). Accordingly, the Court did not consider the images provided in Sirchie's brief in support. [Doc. 7-1 at pp. 6–7]. However, Plaintiff's arguments, which she claims to be facts, regarding the New York Times' article are embedded within her Response, and as such cannot be considered in determining whether she properly states a failure-to-warn/inadequate warning claim. *See Huls*, 437 F. App'x at 832, n.4., *supra*.

Essentially, after culling through the record and stripping arguments that are not properly before the Court, it is left with nothing but legal conclusions unsupported by any factual allegations.

> Under Georgia law, a manufacturer breaches its duty to warn
>
> if it fails to (1) adequately communicate the warning to the ultimate user or (2) fails to provide an adequate warning of the product's potential risks. A failure to communicate a warning can involve issues like the location and presentation of the warning. The failure to adequately warn, by contrast, depends upon the substance of the warning.

*Brown*, 2017 WL 4082690 at *5 (quoting *Bryant v. BGHA Inc.*, 9 F. Supp. 3d. 1374, 1383 (M.D. Ga. 2014)). Aside from Plaintiff's conclusory assertions that Sirchie "failed to warn" or gave an "improper warning," her Amended Complaint provides nothing by way of factual support to make the connection as to how the substance of the purported warning failed, was otherwise improper, or that Sirchie's packaging contained no warning at all, to any consumer. Without more, the Court cannot permit a claim to proceed when it is pled without factual support as required under *McCullough*. 907 F.3d at 1333. Accordingly, the Court **DISMISSES** Plaintiff's claim for failure-to-warn/inadequate warning.

### 3. Attorney's Fees and Punitive Damages

Out of an abundance of caution, the Court addresses the potential claim for attorney's fees against Sirchie.[14] Given that Plaintiff fails to state any claim against Sirchie in her Amended Compalint, she has not provided a basis to authorize an award of attorney's fees as to Sirchie. Attorney's fees and expenses of litigation under Ga. Code Ann. § 13-6-11 are "ancillary and recoverable only where other elements of damages are recoverable on the underlying claim." *Davis v. Johnson*, 634 S.E.2d 108, 110 (Ga. Ct. App. 2006). Accordingly, Plaintiff is not entitled to attorney's fees and expenses as to Sirchie.

Likewise, a claim for punitive damages is contingent upon the success of an underlying tort claim. Because Plaintiff's punitive damages claim is derivative of her other tort claims, it cannot exist in their absence. *Wright v. DISH Network*, LLC, 714 F. App'x 951, 955 (11th Cir. 2017) (citing *D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E.2d 478, 482 (Ga. Ct. App. 2003) ("The derivative claims of attorney['s] fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim."). Therefore, Plaintiff's claim for punitive damages is also **DISMISSED**.

---

[14] In her Amended Complaint, she independently seeks "an award for attorney's fees and costs pursuant to 42 U.S.C. § 1988" against Defendants Maples, Williams, and Henderson, as well as the Monroe County Board of Commissioners. [Doc. 4 at ¶ 1].

## CONCLUSION

In light of the forgoing, the Court **GRANTS** Defendant Sirchie Acquisition Company, LLC's Motion to Dismiss [Doc. 7] and **DISMISSES** Plaintiff's claims asserted against it in her Amended Complaint.

**SO ORDERED**, this 8th day of February 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**